**Transitional Local Bankruptcy Form 4008.1**

[Caption as in Bankruptcy Official Form No. 16B]

**COVER SHEET FOR REAFFIRMATION AGREEMENT**

This form must be completed in its entirety and filed within the time set under FED.R.BANKR.P. 4008. It may be filed by any party to the reaffirmation agreement. The filer also must attach a copy of the reaffirmation agreement to this cover sheet.

Debtor's Name: _Linda Perlman Griffith_  Creditor's Name: _Co-Op Service Credit Union_

1. Amount of debt as of commencement of case: $ _4,603.59_

2. Amount of debt being reaffirmed: $ _4,603.59_

3. Describe collateral, if any, securing debt: _2002 Ford Focus_

4. Repayment term of reaffirmation (number of months): _28_

5. Monthly payment:
   Prior to reaffirmation: $ _179.39_   After reaffirmation: $ _179.39_

6. Annual percentage rate under reaffirmation:
   Prior to reaffirmation: _5.75_   After reaffirmation: _5.75_

7. Debtor's monthly income at time of reaffirmation: $ _1,500.00_

8. Income from Schedule I, line 16: $ _1,895.50_

9. Explain any difference in the amounts set out on lines 7 and 8: _Job loss_

10. Debtor's monthly expenses at time of reaffirmation: $ ~~1,226.00~~ _1,046.61_
    (do not include the monthly expense of this reaffirmed debt)

11. Current expenditures from Schedule J, line 18: $ _1,226.00_

12. Explain any difference in the amounts set out on lines 10 and 11: _N/A_
_Monthly expense of reaffirmed debt not included._

☐ Check this box if the amount on Line 10 of this form exceeds the amount on Line 7 of this Form. If these expenses exceed the income, a presumption of undue hardship arises.

☐ Check this box if the debtor **was not** represented by counsel during the course of negotiating this reaffirmation agreement.

## FILER'S CERTIFICATION

I, _James St. Aubin_, hereby certify that the attached agreement is a true and correct copy of the reaffirmation agreement between the parties identified on this Cover Sheet for Reaffirmation Agreement.

Dated: _8/24/09_

By: _James M. St Aubin_
~~Counsel~~/Agent for _Co-op Services CU_
~~Attorney registration number~~
Business address _29550 Five Mile, Livonia MI 48154_
Telephone number _734 522 3700_
Facsimile number _734 466 6154_
E-mail address _JSTAUBIN@CSCU.org_

## DEBTOR'S CERTIFICATION
(see FED. R. BANKR. P. 4008(b))

I, _Linda Perlman Griffith_, certify that any explanation contained on lines 9 or 12 of this form is true and correct.
(name of debtor)

Dated: _8.7.09_

By: _[signature]_
Signature of debtor
Printed name of debtor _Linda Perlman Griffith_
Home address _6448 S. Gallup St._
_Littleton, CO 80120_
Telephone number
Facsimile number _NA_
E-mail address _l.perl@yahoo.com_

I, _____, certify that any explanation contained on lines 9 or 12 of this form is true and correct.
(name of joint-debtor)

Dated: _____

By: _____
Signature of joint-debtor, if any
Printed name of joint-debtor
Home address
Telephone number
Facsimile number
E-mail address

## ATTORNEY SIGNATURE

Dated: _[signature]_

By: _[signature]_
Counsel to _Debtor_
Attorney registration number _37332_
Business address _9800 Mt. Pyramid Ct. Ste 400_
Telephone number _303-803-4438_
Facsimile number _303-648-4478_
E-mail address _jhoff@hofflawoffices.com_

Form 240A - Reaffirmation Agreement (1/07)

☐ **Presumption of Undue Hardship**
☐ **No Presumption of Undue Hardship**
(Check box as directed in Part D: Debtor's Statement in Support of Reaffirmation Agreement.)

# UNITED STATES BANKRUPTCY COURT
## District of COLORADO

In re LINDA PERLMAN GRIFFITH ,           Case No. 09-22257-MER
            Debtor                                          Chapter 7

## REAFFIRMATION AGREEMENT
*[Indicate all documents included in this filing by checking each applicable box.]*

☑ Part A: Disclosures, Instructions, and      ☑ Part D: Debtor's Statement in
   Notice to Debtor (pages 1 - 5)                   Support of Reaffirmation Agreement

☑ Part B: Reaffirmation Agreement             ☐ Part E: Motion for Court Approval

☑ Part C: Certification by Debtor's Attorney

*[Note: Complete Part E only if debtor was not represented by an attorney during the course of negotiating this agreement. **Note also:** If you complete Part E, you must prepare and file Form 240B - Order on Reaffirmation Agreement.]*

**Name of Creditor:** CO-OP SERVICES CREDIT UNION

☑ *[Check this box if]* Creditor is a Credit Union as defined in §19(b)(1)(a)(iv) of the Federal Reserve Act

**PART A: DISCLOSURE STATEMENT, INSTRUCTIONS AND NOTICE TO DEBTOR**

1.    **DISCLOSURE STATEMENT**

*Before Agreeing to Reaffirm a Debt, Review These Important Disclosures:*

**SUMMARY OF REAFFIRMATION AGREEMENT**
   This Summary is made pursuant to the requirements of the Bankruptcy Code.

**AMOUNT REAFFIRMED**

   The amount of debt you have agreed to reaffirm:           $ 4,603.59 as of 6-22-09

*The amount of debt you have agreed to reaffirm includes all fees and costs (if any) that have accrued as of the date of this disclosure. Your credit agreement may obligate you to pay additional amounts which may come due after the date of this disclosure. Consult your credit agreement.*

**Form 240A - Reaffirmation Agreement (Cont.)**  2
**ANNUAL PERCENTAGE RATE**

*[The annual percentage rate can be disclosed in different ways, depending on the type of debt.]*

    a. If the debt is an extension of "credit" under an "open end credit plan," as those terms are defined in § 103 of the Truth in Lending Act, such as a credit card, the creditor may disclose the annual percentage rate shown in (i) below or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

    (i) The Annual Percentage Rate disclosed, or that would have been disclosed, to the debtor in the most recent periodic statement prior to entering into the reaffirmation agreement described in Part B below or, if no such periodic statement was given to the debtor during the prior six months, the annual percentage rate as it would have been so disclosed at the time of the disclosure statement: _____%.

--- And/Or ---

    (ii) The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor: _____%. If different simple interest rates apply to different balances included in the amount reaffirmed, the amount of each balance and the rate applicable to it are:

$ _____ @ _____ %;
$ _____ @ _____ %;
$ _____ @ _____ %.

    b. If the debt is an extension of credit other than under than an open end credit plan, the creditor may disclose the annual percentage rate shown in (I) below, or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

    (i) The Annual Percentage Rate under §128(a)(4) of the Truth in Lending Act, as disclosed to the debtor in the most recent disclosure statement given to the debtor prior to entering into the reaffirmation agreement with respect to the debt or, if no such disclosure statement was given to the debtor, the annual percentage rate as it would have been so disclosed: <u>5.75</u> %.

--- And/Or ---

    (ii) The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor: _____%. If different simple interest rates apply to different balances included in the amount reaffirmed,

**Form 240A - Reaffirmation Agreement (Cont.)**  3

the amount of each balance and the rate applicable to it are:
$ _____ @ _____ %;
$ _____ @ _____ %;
$ _____ @ _____ %.

c. If the underlying debt transaction was disclosed as a variable rate transaction on the most recent disclosure given under the Truth in Lending Act:

The interest rate on your loan may be a variable interest rate which changes from time to time, so that the annual percentage rate disclosed here may be higher or lower.

d. If the reaffirmed debt is secured by a security interest or lien, which has not been waived or determined to be void by a final order of the court, the following items or types of items of the debtor's goods or property remain subject to such security interest or lien in connection with the debt or debts being reaffirmed in the reaffirmation agreement described in Part B.

| Item or Type of Item | Original Purchase Price or Original Amount of Loan |
|---|---|
| 2002 Ford Focus | $10,901.90 |

VIN 3FAFP37352R236434

*Optional---At the election of the creditor, a repayment schedule using one or a combination of the following may be provided:*

**Repayment Schedule:**

Your first payment in the amount of $_____ is due on _____ (date), but the future payment amount may be different. Consult your reaffirmation agreement or credit agreement, as applicable.

— Or —

Your payment schedule will be: _____ (number) payments in the amount of $_____ each, payable (monthly, annually, weekly, etc.) on the _____ (day) of each _____ ( week, month, etc.), unless altered later by mutual agreement in writing.

— Or —

A reasonably specific description of the debtor's repayment obligations to the extent known by the creditor or creditor's representative.

Monthly payments in the amount of $179.39 due on the 6th of each month with a next due on August 6, 2009. Payments are according to the original contract. According to the Amortization Schedule, there are 28 payments remaining.

**Form 240A - Reaffirmation Agreement (Cont.)**                                                4

### 2. INSTRUCTIONS AND NOTICE TO DEBTOR

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps are not completed, the reaffirmation agreement is not effective, even though you have signed it.

1. Read the disclosures in this Part A carefully. Consider the decision to reaffirm carefully. Then, if you want to reaffirm, sign the reaffirmation agreement in Part B (or you may use a separate agreement you and your creditor agree on).

2. Complete and sign Part D and be sure you can afford to make the payments you are agreeing to make and have received a copy of the disclosure statement and a completed and signed reaffirmation agreement.

3. If you were represented by an attorney during the negotiation of your reaffirmation agreement, the attorney must have signed the certification in Part C.

4. If you were not represented by an attorney during the negotiation of your reaffirmation agreement, you must have completed and signed Part E.

5. The original of this disclosure must be filed with the court by you or your creditor. If a separate reaffirmation agreement (other than the one in Part B) has been signed, it must be attached.

6. <u>If the creditor is not a Credit Union</u> and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court unless the reaffirmation is presumed to be an undue hardship as explained in Part D. <u>If the creditor is a Credit Union</u> and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court.

7. If you were not represented by an attorney during the negotiation of your reaffirmation agreement, it will not be effective unless the court approves it. The court will notify you and the creditor of the hearing on your reaffirmation agreement. You must attend this hearing in bankruptcy court where the judge will review your reaffirmation agreement. The bankruptcy court must approve your reaffirmation agreement as consistent with your best interests, except that no court approval is required if your reaffirmation agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home.

**Form 240A - Reaffirmation Agreement (Cont.)** 5

**YOUR RIGHT TO RESCIND (CANCEL) YOUR REAFFIRMATION AGREEMENT**

You may rescind (cancel) your reaffirmation agreement at any time before the bankruptcy court enters a discharge order, or before the expiration of the 60-day period that begins on the date your reaffirmation agreement is filed with the court, whichever occurs later. To rescind (cancel) your reaffirmation agreement, you must notify the creditor that your reaffirmation agreement is rescinded (or canceled).

**Frequently Asked Questions:**

<u>What are your obligations if you reaffirm the debt?</u> A reaffirmed debt remains your personal legal obligation. It is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Otherwise, your obligations will be determined by the reaffirmation agreement which may have changed the terms of the original agreement. For example, if you are reaffirming an open end credit agreement, the creditor may be permitted by that agreement or applicable law to change the terms of that agreement in the future under certain conditions.

<u>Are you required to enter into a reaffirmation agreement by any law?</u> No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments you agree to make.

<u>What if your creditor has a security interest or lien?</u> Your bankruptcy discharge does not eliminate any lien on your property. A "lien" is often referred to as a security interest, deed of trust, mortgage or security deed. Even if you do not reaffirm and your personal liability on the debt is discharged, because of the lien your creditor may still have the right to take the security property if you do not pay the debt or default on it. If the lien is on an item of personal property that is exempt under your State's law or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you make a single payment to the creditor equal to the current value of the security property, as agreed by the parties or determined by the court.

> **NOTE:** When this disclosure refers to what a creditor "may" do, it does not use the word "may" to give the creditor specific permission. The word "may" is used to tell you what might occur if the law permits the creditor to take the action. If you have questions about your reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement reaffirming a debt. If you don't have an attorney helping you, the judge will explain the effect of your reaffirming a debt when the hearing on the reaffirmation agreement is held.

Form 240A - Reaffirmation Agreement (Cont.)                                6

**PART B: REAFFIRMATION AGREEMENT.**

I (we) agree to reaffirm the debts arising under the credit agreement described below.

1. Brief description of credit agreement:

    Loan for 2002 Ford Focus dated February 4, 2005

2. Description of any changes to the credit agreement made as part of this reaffirmation agreement: n/a

SIGNATURE(S):

Borrower:

Linda Perlman Griffith
(Print Name)
_(Signature)_
Date: 8-7-09

Co-borrower, if also reaffirming these debts:

_____
(Print Name)

_____
(Signature)
Date: _____

Accepted by creditor:

CO-OP SERVICES CREDIT UNION
(Printed Name of Creditor)

29550 Five Mile, Livonia, MI 48154
(Address of Creditor)

_(Signature)_

James St. Aubin, A.V.P. - Adjustments

(Printed Name and Title of Individual Signing for Creditor)

Date of creditor acceptance:
8-24-09

**Form 240A - Reaffirmation Agreement (Cont.)**                                              7

**PART C: CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY).**

*[To be filed only if the attorney represented the debtor during the course of negotiating this agreement.]*

I hereby certify that (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☐ *[Check box, if applicable and the creditor is not a Credit Union.]* A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

Printed Name of Debtor's Attorney: Jessica L. Hoff

Signature of Debtor's Attorney: _____

Date: 8/7/09

Form 240A - Reaffirmation Agreement (Cont.)                                    8
PART D: DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

*[Read and complete sections 1 and 2, **OR**, if the creditor is a Credit Union and the debtor is represented by an attorney, read section 3. Sign the appropriate signature line(s) and date your signature. If you complete sections 1 and 2 **and** your income less monthly expenses does not leave enough to make the payments under this reaffirmation agreement, check the box at the top of page 1 indicating "Presumption of Undue Hardship." Otherwise, check the box at the top of page 1 indicating "No Presumption of Undue Hardship"]*

1. I believe this reaffirmation agreement will not impose an undue hardship on my dependents or me. I can afford to make the payments on the reaffirmed debt because my monthly income (take home pay plus any other income received) is $ _1500_ , and my actual current monthly expenses including monthly payments on post-bankruptcy debt and other reaffirmation agreements total $ _1046_ , leaving $ _454_ to make the required payments on this reaffirmed debt.

I understand that if my income less my monthly expenses does not leave enough to make the payments, this reaffirmation agreement is presumed to be an undue hardship on me and must be reviewed by the court. However, this presumption may be overcome if I explain to the satisfaction of the court how I can afford to make the payments here: _____

_____

**(Use an additional page if needed for a full explanation.)**

2. I received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement.

Signed: _[signature]_
(Debtor)

_____
(Joint Debtor, if any)
Date:  _8·7·09_

— Or —

*[If the creditor is a Credit Union and the debtor is represented by an attorney]*

3. I believe this reaffirmation agreement is in my financial interest. I can afford to make the payments on the reaffirmed debt. I received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement.

Signed: _____
(Debtor)

_____
(Joint Debtor, if any)
Date: _____

**Form 240A - Reaffirmation Agreement (Cont.)**                                9

**PART E: MOTION FOR COURT APPROVAL**
*[To be completed and filed only if the debtor is not represented by an attorney during the course of negotiating this agreement.]*

### MOTION FOR COURT APPROVAL OF REAFFIRMATION AGREEMENT

I (we), the debtor(s), affirm the following to be true and correct:

I am not represented by an attorney in connection with this reaffirmation agreement.

I believe this reaffirmation agreement is in my best interest based on the income and expenses I have disclosed in my Statement in Support of this reaffirmation agreement, and because (provide any additional relevant reasons the court should consider):

Therefore, I ask the court for an order approving this reaffirmation agreement under the following provisions (*check all applicable boxes*):

☐ 11 U.S.C. § 524(c)(6) (debtor is not represented by an attorney during the course of the negotiation of the reaffirmation agreement)

☐ 11 U.S.C. § 524(m) (presumption of undue hardship has arisen because monthly expenses exceed monthly income)

Signed: _____
   (Debtor)

   _____
   (Joint Debtor, if any)

Date: _____

| 74 FORD | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Rough Trade-In | Avg. Trade-In | Clean Trade-In | Body Type | Model No. | MSRP | Weight | Clean Loan | Clean Retail | |
| **FORD** | | | | | | | | | | |
| P A | 700 | | | Add Removable Hardtop | | | | 700 | 100 | 100 |
| | | | | | | | | Mileage Class: I | | |
| **2003 FOCUS-4 Cyl.** | | | | | | | | | | |
| Veh. Ident.: 1FA()P(Model)()()3()100001 Up. | | | | | | | | | | |
| S | 2425 | 3200 | 3825 | Hatchback 3D ZX3 | 31 | 12680 | 2593 | 3450 | 2075 | 3150 |
| S | 3600 | 4450 | 5150 | Hatchback 3D SVT (6 Spd.) | 39 | 18380 | 2750 | 4650 | 2325 | 3450 |
| E | 3025 | 3825 | 4475 | Hatchback 5D ZX5 | 37 | 15385 | 2675 | 4050 | 2600 | 3725 |
| E | 3875 | 4750 | 5450 | Hatchback 5D SVT (6 Spd.) | 37 | 19085 | 2750 | 4925 | 3150 | 4275 |
| N | 2000 | 2725 | 3325 | Sedan 4D LX | 33 | 12990 | 2586 | 3000 | 2850 | 3975 |
| G | 2550 | 3325 | 3950 | Sedan 4D SE | 34 | 14660 | | 3575 | 3450 | 4600 |
| E | 2875 | 3675 | 4325 | Sedan 4D ZTS | 38 | 15580 | | 3900 | | |
| E | 2775 | 3575 | 4225 | Wagon 4D SE | 36 | 14325 | 2683 | 3825 | | |
| R | 3050 | 3875 | 4525 | Wagon 4D ZTW | 36 | 17355 | | 4075 | | |
| | 500 | | | Add European Appearance Pkg. (SVT) | | | | 500 | | |
| | 125 | | | Add Aluminum/Alloy Wheels (LX) | | | | 125 | | |
| | 150 | | | Add Audiophile Stereo System | | | | 150 | | |
| C | 75 | | | Add Cruise Control (ZX3, ZX5, LX, SE) | | | | 75 | | |
| A | 200 | | | Add Leather Seats (Std. SVT) | | | | 200 | | |
| R | 75 | | | Add Power Locks (ZX3, LX, SE Wagon) | | | | 75 | | |
| S | 300 | | | Add Power Sunroof | | | | 300 | | |
| | 350 | | | Deduct W/out Air Conditioning | | | | 350 | | |
| | 325 | | | Deduct W/out Automatic Trans. (Ex. SVT) | | | | 325 | | |
| **2003 ZX2-4 Cyl.** | | | | | | | | | | |
| Veh. Ident.: 3FAFP113()3R100001 Up. | | | | | | | | | | |
| | 2175 | 2925 | 3525 | Coupe 2D | 11 | 12940 | 2478 | 3175 | | |
| | 75 | | | Add Cruise Control | | | | 75 | | |
| | 200 | | | Add Leather Seats | | | | 200 | | |
| | 75 | | | Add Power Door Locks | | | | 75 | | |
| | 300 | | | Add Power Sunroof | | | | 300 | | |
| | 75 | | | Deduct W/out Air Conditioning | | | | 75 | | |
| | 350 | | | Deduct W/out Automatic Trans. | | | | 350 | | |
| | | | | | | | | Mileage Class: II | | |
| **2003 MUSTANG-V6** | | | | | | | | | | |
| Veh. Ident.: 1FAFP(Model)4()3F100001 Up. | | | | | | | | | | |
| | 3450 | 4350 | 5100 | Coupe 2D | 40 | 17475 | 3066 | 4600 | | |
| | 4700 | 5700 | 6500 | Convertible 2D | 44 | 23145 | 3208 | 5850 | | |
| | | | | | | | | Mileage Class: I | | |
| **2003 MUSTANG-V8-5/6 Spd./AT** | | | | | | | | | | |
| Veh. Ident.: 1FAFP(Model)()()3F100001 Up. | | | | | | | | | | |
| | 5650 | 6700 | 7550 | Coupe 2D GT | 42 | 23345 | | 6800 | | |
| | 7925 | 9050 | 9975 | Coupe 2D MACH 1 | 42 | 28370 | | 9000 | | |
| | 12400 | 13675 | 14700 | Coupe 2D Cobra | 48 | 33125 | 3665 | 13250 | | |
| | 13050 | 14350 | 15400 | Coupe 2D Cobra 10th Anniv. | 48 | 34420 | | 13875 | | |
| | 6800 | 7900 | 8775 | Convertible 2D GT | 45 | 27620 | | 8275 | | |
| | 13575 | 14875 | 15925 | Convertible 2D Cobra | 49 | 37370 | 3780 | 14350 | | |
| | 14225 | 15550 | 16625 | Convertible Cobra 10th Anniv. | 49 | 38665 | | 14975 | | |
| **MUSTANG OPTIONS** | | | | | | | | | | |
| | 250 | | | Add Pony Package (V6) | | | | 250 | | |
| | 250 | | | Add Leather Seats (Std. MACH 1, Cobra) | | | | 250 | | |
| | 175 | | | Add MACH Stereo (Std. MACH 1, Cobra) | | | | 175 | | |
| | 150 | | | Add Power Seat (Coupe V6) | | | | 150 | | |
| | 400 | | | Deduct W/out Automatic Trans. (V6) | | | | 400 | | |

ADJUST FOR MILEAGE
CENTRAL EDITION - APRIL 2009

---

| | | | | | | | | FORD 75 | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Rough Trade-In | Avg. Trade-In | Clean Trade-In | Body Type | Model No. | MSRP | Weight | Clean Loan | Clean Retail | |
| P A | | 100 | | Add Removable Hardtop | | | | 100 | 100 | |
| | | | | | | | | Mileage Class: II | | |
| **2003 TAURUS-V6** | | | | | | | | | | |
| Veh. Ident.: 1FA()P(Model)()()3()100001 Up. | | | | | | | | | | |
| S | | 2850 | 3500 | Sedan 4D LX | 52 | 19180 | 3343 | 3150 | 2075 | 4900 |
| S | | 3150 | 3825 | Sedan 4D SE | 53 | 19695 | | 3450 | | 5250 |
| E | | 3450 | 4125 | Sedan 4D SES | 55 | 21020 | | 3725 | | 5600 |
| E | | 4025 | 4750 | Sedan 4D SEL | 55 | 22920 | 3322 | 4275 | | 6275 |
| N | | 3700 | 4400 | Wagon 4D SE | 58 | 21345 | | 3975 | | 5900 |
| G | | 4350 | 5100 | Wagon 4D SEL | 59 | 23170 | 3514 | 4600 | | 6700 |
| | | 225 | | Add 3.0L Duratec V6 Engine (Std. Sedan SEL) | | | | 225 | 250 | |
| | | 150 | | Add Aluminum/Alloy Wheels (LX) | | | | 150 | 175 | |
| E | | 250 | | Add Leather Seats | | | | 250 | 300 | |
| | | 175 | | Add MACH Stereo System | | | | 175 | 200 | |
| | | 150 | | Add Power Seat (Std. SES, SEL) | | | | 150 | 175 | |
| C | | 350 | | Add Power Sunroof | | | | 350 | 400 | |
| A | | 100 | | Deduct W/out Cruise Control | | | | 100 | 100 | |
| R | | 250 | | Deduct W/out Third Seat (Wagon) | | | | 250 | 250 | |
| S | | | | | | | | | | |
| | | | | | | | | Mileage Class: III | | |
| **2003 CROWN VICTORIA-V8** | | | | | | | | | | |
| Veh. Ident.: 2FA()P(Model)W()3X100001 Up. | | | | | | | | | | |
| | | 4525 | 5400 | Sedan 4D Police Interceptor | 71 | 22935 | | 4875 | | 7175 |
| | | 4925 | 5400 | Sedan 4D S | 72 | 23465 | | 4450 | | 6650 |
| | | 4325 | 5175 | Sedan 4D | 73 | 23390 | 4057 | 4675 | | 6925 |
| | | 5400 | 6325 | Sedan 4D LX | 74 | 27075 | | 5700 | | 8225 |
| | | 6475 | 7450 | Sedan 4D LX Sport | 74 | 28795 | | 6725 | | 9425 |
| | | 5675 | 6800 | Sedan 4D S Extended | 70 | 25490 | | 5125 | | 7475 |
| | | 275 | | Add Handling Package (Std. LX Sport) | | | | 275 | 325 | |
| | | 200 | | Add Aluminum/Alloy Wheels (Std. LX Sport) | | | | 200 | 225 | |
| | | 300 | | Add Leather Seats (Std. LX Sport) | | | | 300 | 350 | |
| | | 125 | | Deduct W/out Cruise Control | | | | 125 | 125 | |
| | | 175 | | Deduct W/out Power Seat | | | | 175 | 175 | |
| | | | | | | | | Mileage Class: IV | | |
| **2003 THUNDERBIRD-V8** | | | | | | | | | | |
| Veh. Ident.: 1FAHP60A()3W100001 Up. | | | | | | | | | | |
| | 10125 | 11925 | 13450 | Convertible 2D | 60 | 36340 | 3775 | 12125 | | 16175 |
| | 600 | | | Add Removable Hardtop | | | | 600 | 675 | |
| **2002 FOCUS-4 Cyl.** | | | | | | | | | | |
| Veh. Ident.: 1FA()P(Model)()()2()100001 Up. | | | | | | | | | | |
| | | 2150 | 2900 | Hatchback 3D ZX3 | 31 | 12415 | 2598 | 3150 | | 4775 |
| | | 2625 | 3375 | Hatchback 3D SVT (6 Spd) | 39 | 17505 | 2770 | 4075 | | 6025 |
| | | 2625 | 3400 | Hatchback 5D ZX5 | 37 | 15615 | 2699 | 3625 | | 5375 |
| | | 2775 | 3500 | Sedan 4D LX | 33 | 12730 | 2604 | 2750 | | 4275 |
| | | 2225 | 2975 | Sedan 4D SE | 34 | 14320 | 2564 | 3225 | | 4850 |
| | | 2500 | 3275 | Sedan 4D ZTS | 38 | 15240 | 2551 | 3525 | | 5225 |
| | | 2450 | 3225 | Wagon 4D SE | 36 | 16225 | 2717 | 3475 | | 5150 |
| | | 2700 | 3500 | Wagon 4D ZTW | 36 | 17705 | 2717 | 3750 | | 5525 |
| | | 100 | | Add Aluminum/Alloy Wheels (LX) | | | | 100 | 125 | |
| | | 100 | | Add Audiophile Stereo System | | | | 100 | 125 | |
| | | 50 | | Add Cruise Control (ZX3, LX, SE) | | | | 50 | 75 | |
| | | 150 | | Add Leather Seats (Std. SVT, ZTW) | | | | 150 | 175 | |
| | | 50 | | Add Power Door Locks (ZX3, LX) | | | | 50 | 75 | |
| | | 250 | | Add Power Sunroof | | | | 250 | 300 | |
| | | 50 | | Add Power Windows (ZX3, LX) | | | | 50 | 75 | |

ADJUST FOR MILEAGE
CENTRAL EDITION - APRIL 2009

# Receipt for RD-108 Dealer Transaction

| APPLICATION FOR MICHIGAN TITLE AND REGISTRATION | |
|---|---|

**Dealer:** JACK DEMMER FORD INC
**Address:** 37300 MICHIGAN AVE B809
**City:** WAYNE    MI 48184

**Dealer License No.:** A3988

**Odometer:** 028363 A
A = Actual mileage
B = Not actual mileage
C = Exceeds mechanical limits of odometer

**Transaction Type:** TRANS TITLE/TRANS PLATE

**Validation:**
02152005 G6 S046 128 0023    626.90
128S0460023    028363 A
*S.I. RECORDED*

| Plate No. | Expires on | Months |
|---|---|---|
| GBC292 | 11/29/2005 | 12 |

| Year | Make | Body Style | Code | County |
|---|---|---|---|---|
| 2002 | FORD | 4 DOOR | 01 | 82 |

| Vehicle No. | Fee Cat. or Wt. | License Fee |
|---|---|---|
| 3FAFP37352R236434 | 000015 | 0.00 |

**Driver License No./PIDs of All Owners/Lessees:** P 645 522 143 888

**Title:** 15.00
**Title Late Fee:** 0.00

**Complete Name(s) and Address(es) of All Owners or Lessors:**
LINDA DIANE PERLMAN-GRIFFITH
24932 POWERS AVE
DEARBORN HEIGHTS    MI 48125

**Tax:** 603.90
**Transfer Fee:** 8.00
**Total:** 626.90

**Complete Name(s) and Address(es) of Lessees:**

**Full Rights to Survivor:** N

**First Secured Interest:**
COOP SERVICES CREDIT UNION
PO BOX 51700
LIVONIA    MI 48151
**Filing Date:** 02/15/2005

**Second Secured Interest:** NONE

**Purchase Price of Vehicle:** 10065.00

Authority Granted by Act 300 of 1949, as amended.    RD-108L (10-2000)

to the terms of this Contract, and the Seller (referred to as 'you' or 'your' in this Contract) agrees to sell the Vehicle described below and all accessory parts and equipment attached to or used in connection with the vehicle (hereinafter...) ... below, and I grant you a security interest in the Vehicle to secure the payment of all amounts due to you under this Contract. Words, numbers or phrases ...

### VEHICLE DESCRIPTION

| New or Used | Year | Make or Trade Name | Model | Serial Number |
|---|---|---|---|---|
| USED | 02 | FORD | FOCUS | 3FAFP37352R236434 |

### TRUTH IN LENDING DISCLOSURE

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments | Total Sale Price |
|---|---|---|---|---|
| The cost of my credit as a yearly rate. | The dollar amount the credit will cost me. | The amount of credit provided to me or on my behalf. | The amount I will have paid after I have made all payments as scheduled. | The total cost of my purchase on credit, including my downpayment of $ 800.00 |
| 5.75 % | $ 2014.18 | $ 10901.90 | $ 12916.08 | $ 13716.08 |

### MY PAYMENT SCHEDULE will be:

| Number of payments | Amount of payment | When payments are due |
|---|---|---|
| 71 | $ 179.39 | First Payment Due Date 03/06/05 — All other payments will be due on ☐ the same day of each following month. ☐ |
| 1 | $ 179.39 | L61 |

SECURITY -- I am giving a security interest in the Vehicle being purchased.

| Simple Interest Rate | PREPAYMENT -- If I pay off early, I may have to pay a minimum finance charge. | LATE CHARGE -- If a scheduled payment is more than 10 days late, I will be charged a late charge equal to the greater of $15.00 or 5% of the late payment. | See additional contract terms below and on the reverse side for further information about nonpayment, default, the right to accelerate the maturity of the obligation, and prepayment rebates and penalties. |
|---|---|---|---|
| % | | | |

INSURANCE -- Credit Life, Credit Disability and Guaranteed Auto Protection (GAP) Insurance are not required to obtain credit and will not be provided unless I/We agree to pay the premiums by signing or initialing below. This is only a request and application for insurance and the coverage may be denied. If it is denied, the requesting party(ies) will be notified. The amount of coverage will be shown in the Insurance policy and/or certificate. The term of any requested coverage is shown below at your option unless required by law.

| Type | Premium Dollar Amount | Term | I/We DO NOT want credit insurance X |   |
|---|---|---|---|---|
| Credit Life | N/A | | I/We want Credit Life Insurance: X | X |
| Credit Disability | N/A | | I want Credit Disability Insurance: X | |
| GAP | N/A | | I want GAP Insurance: X | |

### ITEMIZATION OF AMOUNT FINANCED

1. Cash Price of Installment Sale Transaction
   a. Taxable Costs, Fees, and Charges
      (i) Motor Vehicle Cash Price        $ 10065.00
      (ii) Document Preparation Fee       $ 75.00
      Total Taxable Costs, Fees and Charges [a(i) + a(ii)] $ 10065.00
   b. Michigan Sales Tax ................................ $ 603.90
   c. Non-Taxable Amount of Cash Price (if applicable):
      Negative Equity Value of Trade-In (from line 2b(iii)B) .. $ N/A
   Total Cash Price of Installment Sale Transaction [1a + 1b + 1c] ......... $ 10668.90
2. Down Payment
   a. Cash Down Payment ............................... $ N/A
   b. Trade-In (describe Trade-In and Lien Holder, if applicable)
      96 SATURN
      (i) Gross Value of Trade-In ....................... $ 800.00
      (ii) Amount Owed on Trade-In (paid to Lien Holder) $
      (iii) Net Equity Value of Trade-In (enter one only)
           A. IF 2b(i) minus 2b(ii) is greater than or equal to $0.00 enter Net Trade-In ....... $ 800.00
           B. IF 2b(i) minus 2b(ii) is less than $0.00, enter Negative Equity Value of Trade-In (also enter on line 1c) ............ $ N/A
   Total Down Payment [2a + 2b(iii)A] ........................... $ 800.00

3. Unpaid Cash Price Balance [1 minus 2] ................ $ 9868.90
4. Insurance Premiums Paid to Others on My Behalf
   a. Credit Life ............................ $ N/A
   b. Credit Disability ................... $ N/A
   c. Liability Insurance .................. $ N/A
   d. Extended Warranty* ................ $ 1010.00
   e. ........................................... $ N/A
   Total Insurance Premiums Paid to Others
   [4a + 4b + 4c + 4d + 4e] ................... $ 1010.00
5. Additional Amounts Paid to Others on My Behalf
   a. Filing Fees ............................ $ N/A
   b. Registration Fee .................... $ 15.00
   c. Licence Plate Fee .................. $ 8.00
   d. ........................................... $ N/A
   Total Of Additional Amounts Paid To Others
   [5a + 5b + 5c + 5d] ........................ $ 23.00
6. Amount Financed [Total of 3, 4, and 5] ............. $ 10901.90
7. FINANCE CHARGE ................................... $ 2014.18
8. Time Balance [Total of 6 and 7] ..................... $ 13716.08

* I understand that you may be retaining a portion of this amount.

OTHER INSURANCE -- I/We wish to purchase, and agree to pay for, the insurance indicated below. I understand I may purchase such insurance through a carrier, broker, or agent of my choice. By my initials at the right, I signify my request that the Seller obtain this insurance for me/us.    Buyer requests Seller to obtain insurance. (Initial Here)

| Name of Liability Insurance Company | | | | | Effective Date | | | Expiration Date | |
|---|---|---|---|---|---|---|---|---|---|
| ☐ Fire and Theft | ☐ Collision | Ded. Amount $ | ☐ Property Damage | Limit $ | ☐ Personal Injury | Amount $ | and Limit $ | Premium $ | |
| Type | Ded. Amount $ | Limit $ | Premium $ | Type | Ded. Amount $ | Limit $ | Premium $ | Total Liability Premiums $ N/A | |

**WARNING: The insurance afforded hereunder does not cover liability for injury to persons or damage to property of others unless so indicated hereon.**

There are terms and conditions on the reverse side. I agree to them by my signature below.
(You refers to the Buyer in the following notice.)
**NOTICE TO BUYER: DO NOT SIGN THIS CONTRACT IN BLANK. YOU ARE ENTITLED TO 1 TRUE COPY OF THE CONTRACT YOU SIGN WITHOUT CHARGE. KEEP IT TO PROTECT YOUR LEGAL RIGHTS.**

SIGNATURE -- I have signed this Contract on the date shown below and I acknowledge that I have read it, that I understand it, and that I have received a completely filled-in copy of it.

| Seller's Name (Creditor) | | Date 02/04/05 |
|---|---|---|
| By JACK DEMMER FORD | | Buyer's Name LINDA DIANE PERLMAN-GRIFFITH |
| Its | | Buyer's Signature X |
| Street Address | City | Buyer's Name |
| County 37300 MICHIGAN AVE | State | Buyer's Signature X |
| WAYNE | MI | |

The above named Seller does assign this Contract, according to the terms and provisions contained on the reverse side under "Seller Warranty and Assignment", to which provisions Seller signifies its assent by signing above. TO:

| Street Address 24932 POWERS AVE | City DEARBORN HEIGHTS |
|---|---|
| County WAYNE | State MI |

Buyer acknowledges receipt of a completed copy

CO OP SERVICES CREDIT UNION

If you are buying a used vehicle, the information you see on the window form for the vehicle, titled BUYERS GUIDE, is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

INTEREST RATE AND EARLY PAYMENT REBATE(S). This purchase is subject to a simple interest rate, shown on the reverse side, which will be assessed on the unpaid balance. The dollar amount shown on the reverse side, in the box entitled "Total of Payments" is the amount I will pay if I make every payment on its due date. I may make payments early without penalty, and if I do, there will be a decrease in the interest charged. If I make payments later than the due date, there will be an increase in the interest I will pay. If the holder of this Contract chooses to defer interest charges which accrue because payments are received later than the due date, and if this Contract calls for equal monthly payments, then if the final installment is more than 105% of any regular payment as a result of deferred interest, I have the option to pay the deferred interest charge 25 days after the due date of the last regular payment. If I pay off this Contract in full early, you may retain a minimum Finance Charge of $15.00.

LATE CHARGE. This charge, as shown on the reverse side, is to cover your extra expense in handling late payments. You may deduct this charge from any payment I make. You have the contractual right to charge me the late charge shown on the reverse side, however, you may charge me a lesser amount if you choose to.

LIABILITY INSURANCE. I understand that liability insurance coverage for bodily injury and property damage caused to others is not included, unless so chosen by me on the reverse side.

I, the Buyer, promise and agree to the following:

1. I will be in default and you can require the balance of my debt to be paid at once, without prior notice or demand, if: (1) I do not make a payment on time; (2) I gave any false information on my application or while I owe a balance under this Contract; (3) I do not keep any promise in this Contract; (4) I should die or be involved in any bankruptcy, insolvency, receivership or custodial proceeding brought by or against me; or (5) you should, in good faith, believe my ability to repay this Contract, the Vehicle, or your ability to resort to the Vehicle, is or soon will be impaired, time being of the very essence. If I default, I will immediately pay you the entire balance due under this Contract. If I do not pay in full, I agree to give you the Vehicle. I authorize you to offset the full amount which I owe to you under this Contract against any money or credit which I have in any account(s) with you.

2. I will hold complete legal title to the Vehicle in my name(s) as shown on the front of this Contract. I will keep it free from all security interests, except under this Contract, and I will defend it against all claims of others.

3. I will not transfer possession, sell, or assign the Vehicle or any interest in it. I will not take the Vehicle from the State where I now live for more than thirty (30) days without your consent. I will use the Vehicle only in a lawful way and with reasonable care. I will keep it in good repair.

4. I will at all times keep the Vehicle insured **through a licensed carrier, broker or agent of my choice** against loss, damage, theft, other perils within the term "comprehensive", and as otherwise required by you, in an amount satisfactory to you. I will keep my insurance premiums paid current. The insurance will provide that the loss shall be payable to you. You may apply any proceeds of the insurance, which you may receive, toward the payment of amounts owing under this Contract. I give you power of attorney to sign my name on any given insurance proceeds check or draft as well as any other instrument by which such proceeds are paid.

NOTICE: YOU HAVE A SECURITY INTEREST IN THE COLLATERAL. THE CONTRACT REQUIRES THAT I MAINTAIN INSURANCE ON THE COLLATERAL TO PROTECT YOUR INTEREST. IF I FAIL TO PROVIDE INSURANCE ON THE COLLATERAL YOU ARE AUTHORIZED TO PLACE INSURANCE ON THE COLLATERAL IN ORDER TO PROTECT YOUR INTEREST.

If I do not maintain this insurance, with you named as loss payee, you may (but are not required to) purchase such insurance to protect only your interest in the Vehicle, and you may include other coverages you feel are appropriate. I understand that such single interest protection for you will not protect my interest in the Vehicle. I will pay the premiums for such insurance on demand, with interest at the rate stated in this Contract, and that amount shall become a part of the debt secured by this Contract.

5. You may inspect the Vehicle wherever it is located. You may perform any promise of mine which I fail to perform. You may take any other action necessary for the proper care of the Vehicle. I agree to pay you for any expenses you may incur. If I fail to pay you, you may add the expense to the balance owing on this Contract, together with interest at a rate equal to the rate applicable to this Contract, from the date incurred.

6. If I default, you have the right to take the Vehicle. If you decide to, I agree to bring the Vehicle to you. If I do not, you have the right to enter the place where it is kept and take it, unless you cannot do so peacefully. You need not notify me before you do this. You can use the license plates when moving the Vehicle. To the extent permitted by law, I agree to pay all reasonable agent and attorney fees incurred by you in collecting the debt evidenced by this Contract or in the taking of any collateral securing this Contract. The sale of the Vehicle will be governed by the Uniform Commercial Code. Notification of the intended sale of the Vehicle will be reasonable and proper if mailed at least seven (7) days before sale, postage prepaid, and addressed to me at the address shown on this Contract or at a more current address if known to you. To the extent permitted by law, if the money you get from the sale of the Vehicle does not pay off all that I owe, I will pay the difference. In taking possession of the Vehicle, you may come into possession of certain of my personal property. In that event, you may hold such property for whatever period of time you feel

Seller Warranty and Assignment:

Value received, the undersigned (hereafter referred to as "we" or "us") hereby sells, assigns, and transfers to the Assignee (hereafter referred to as "you" or "your") named on the face of this Contract, our entire right, title, and interest in this Contract. To induce you to purchase said Contract, we represent and warrant to you as follows:

1. This Contract is and will remain valid, binding, and enforceable, and the signature of the Buyer(s) is genuine.

2. The subject Vehicle has been delivered to the Buyer, and the Buyer has purchased the same for the Buyer's own use and benefit unless otherwise stated in the Contract.

3. In the event the Vehicle may be titled, an application has been made to register the title to the Vehicle in the name of the Buyer, and such application contains a request to show your first lien upon the evidence of the Title.

4. The facts set forth in this Contract are true.

5. All statements made by the Buyer on any forms related hereto are true to our knowledge and belief.

6. With reference to this transaction, we have complied fully with the requirements of the Federal Truth in Lending Act and Equal Credit Opportunity Act.

All warranties herein contained are made to induce you to purchase this Contract; and, if there is a breach, without regard to your or our knowledge or lack of knowledge with respect thereto at the time thereof, we will, on demand, repurchase this Contract from you for the balance then remaining unpaid. We waive all demands and notices of default and consent that, without notice to us, you may extend time to or compromise or release, by operation of law or otherwise, any right against the Buyer or any other obligor.

Recourse/Repurchase Terms:

Seller, by signing below, agrees to the recourse or repurchase terms checked below.

Check the Applicable Box:

☐ With **Full Recourse** and unconditional guarantee.

☐ **Full Repurchase** — Seller agrees that in the event of default by the Buyer, Seller will repurchase said Vehicle from Assignee for the balance owing thereon, including all defaults of the Buyer, notwithstanding extensions of time and performance.

☐ **Partial Repurchase** — Seller agrees that in the event of default by the Buyer, Seller will repurchase said Vehicle from Assignee for the entire amount then owing or, at Assignee's election, will pay to Assignee, upon demand, the amount shown directly below to be released from such obligation to repurchase. In case of default by confiscation, conversion, or collusion, delivery is waived.

| Amount to be paid to Assignee |
| --- |
| $ |

☐ **Limited Repurchase** — If the Buyer fails to satisfactorily pay the number of installments noted below upon the Contract, Seller will purchase the Vehicle for the balance owing thereon.

| Number of Missed Installments |
| --- |

Seller Signature _____

------------------------------------------------ Loan Amortization Schedule ------------------------------------------------

| Payment | Payment Date | Start Balance | Payment Amount | Interest Paid | Principal Paid | Ending Balance |
|---|---|---|---|---|---|---|
| 1 | 07-06-2009 | 4,603.59 | 179.39 | 21.76 | 157.63 | 4,445.96 |
| 2 | 08-06-2009 | 4,445.96 | 179.39 | 21.71 | 157.68 | 4,288.28 |
| 3 | 09-06-2009 | 4,288.28 | 179.39 | 20.94 | 158.45 | 4,129.83 |
| 4 | 10-06-2009 | 4,129.83 | 179.39 | 19.52 | 159.87 | 3,969.96 |
| 5 | 11-06-2009 | 3,969.96 | 179.39 | 19.39 | 160.00 | 3,809.96 |
| 6 | 12-06-2009 | 3,809.96 | 179.39 | 18.01 | 161.38 | 3,648.58 |
| 7 | 01-06-2010 | 3,648.58 | 179.39 | 17.82 | 161.57 | 3,487.01 |
| 8 | 02-06-2010 | 3,487.01 | 179.39 | 17.03 | 162.36 | 3,324.65 |
| 9 | 03-06-2010 | 3,324.65 | 179.39 | 14.66 | 164.73 | 3,159.92 |
| 10 | 04-06-2010 | 3,159.92 | 179.39 | 15.43 | 163.96 | 2,995.96 |
| 11 | 05-06-2010 | 2,995.96 | 179.39 | 14.16 | 165.23 | 2,830.73 |
| 12 | 06-06-2010 | 2,830.73 | 179.39 | 13.82 | 165.57 | 2,665.16 |
| 13 | 07-06-2010 | 2,665.16 | 179.39 | 12.60 | 166.79 | 2,498.37 |
| 14 | 08-06-2010 | 2,498.37 | 179.39 | 12.20 | 167.19 | 2,331.18 |
| 15 | 09-06-2010 | 2,331.18 | 179.39 | 11.38 | 168.01 | 2,163.17 |
| 16 | 10-06-2010 | 2,163.17 | 179.39 | 10.22 | 169.17 | 1,994.00 |
| 17 | 11-06-2010 | 1,994.00 | 179.39 | 9.74 | 169.65 | 1,824.35 |
| 18 | 12-06-2010 | 1,824.35 | 179.39 | 8.62 | 170.77 | 1,653.58 |
| 19 | 01-06-2011 | 1,653.58 | 179.39 | 8.08 | 171.31 | 1,482.27 |
| 20 | 02-06-2011 | 1,482.27 | 179.39 | 7.24 | 172.15 | 1,310.12 |
| 21 | 03-06-2011 | 1,310.12 | 179.39 | 5.78 | 173.61 | 1,136.51 |
| 22 | 04-06-2011 | 1,136.51 | 179.39 | 5.55 | 173.84 | 962.67 |
| 23 | 05-06-2011 | 962.67 | 179.39 | 4.55 | 174.84 | 787.83 |
| 24 | 06-06-2011 | 787.83 | 179.39 | 3.85 | 175.54 | 612.29 |
| 25 | 07-06-2011 | 612.29 | 179.39 | 2.89 | 176.50 | 435.79 |
| 26 | 08-06-2011 | 435.79 | 179.39 | 2.13 | 177.26 | 258.53 |
| 27 | 09-06-2011 | 258.53 | 179.39 | 1.26 | 178.13 | 80.40 |
| 28 | 10-06-2011 | 80.40 | 80.78 | 0.38 | 80.40 | 0.00 |

Interest Rate: 5.7500   Total Interest Paid: 320.72   Year Basis: 366   Days Method: Actual